UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

RANDAL LAMAR RICHARDSON,  )
                          )
      Plaintiff,           )
                          )
v.                         )    CV423-001
                          )
JOHN E. MORSE, *et al.*,   )
                          )
      Defendants.          )

**ORDER AND REPORT AND RECOMMENDATION**

*Pro se* plaintiff Randal Lamar Richardson filed this 42 U.S.C. § 1983 action against two state-court judges, a district attorney, an assistant district attorney, and two public defenders. *See* doc. 1 at 2-3. The Court granted him leave to pursue this case *in forma pauperis*. Doc. 8. He returned the required forms. Docs 10 & 15. The Court, therefore, proceeds to screen his Complaint, pursuant to 28 U.S.C. § 1915A. Since it is clear that his claims are all fatally flawed, his Complaint should be **DISMISSED**. Doc. 1.

Before considering Richardson's allegations, he has also moved for court-appointed counsel. *See* doc. 13. Richardson has no constitutional right to counsel in this civil case. *Wright v. Langford*, 562 F. App'x 769,

777 (11th Cir. 2014) (citing *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999)). "Although a court may, pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel for an indigent plaintiff, it has broad discretion in making this decision, and should appoint counsel only in exceptional circumstances." *Id.* (citing *Bass*, 170 F.3d at 1320). Appointment of counsel in a civil case is a "privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990) (citing *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987), and *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985)). "[T]his Court has repeatedly found that prisoners do not receive special consideration [for appointed counsel] notwithstanding the challenges of litigation in a case while incarcerated." *Holzclaw v. Milton*, 2019 WL 1474398, at * 1 (S.D. Ga. Apr. 3, 2019) (internal quotation marks and citation omitted); *see also Bell v. Lamb*, 2021 WL 1954739, at * 3 (S.D. Ga. Mar. 30, 2021). General lack of education, including legal education, is also not a sufficient basis to

require appointment of counsel. *See, e.g., Brown v. Wilcher*, 2021 WL 411508, at *1 (S.D. Ga. Feb. 5, 2021).

The Eleventh Circuit has explained that "the key" to assessing whether counsel should be appointed "is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help." *McDaniels v. Lee,* 405 F. App'x 456, 457 (11th Cir. 2010) (quoting *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993)). Richardson has presented "the essential merits of his position" to the Court. There is, therefore, no indication of any "exceptional circumstance" that warrants appointment of counsel. *Fowler*, 899 F.2d at 1096. Richardson's motion is, therefore, **DENIED**. Doc. 13.

The Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), so allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal). Because Plaintiff is

proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

Richardson's Complaint names six defendants: Chatham County, Georgia Superior Court Judges Morse and Walmsley, Chatham County District Attorney Shaleena Cook Jones, and Assistant District Attorney Margaret H. Deleon, and two assistant public defenders, Katherine M. Kelly and James S. Byrne. *See* doc. 1 at 2-3. He alleges various procedural and substantive defects in his ongoing state prosecution. *See, e.g.,* doc. 1 at 5 (referring to "lengthy and severe pre-trial detainment"); *see also id.* at 12-31 (discussing alleged defects in the state court proceedings). He has also filed a request to "amend" the Clerk's categorization of his suit to make clear that its "primary cause . . . is a result of the listed state actors, who are acting in concert to deprive plaintiff of his constitutional rights and liberty interest in his pursuit to have his fatally flawed bill of indictment . . . challenged." Doc. 16 at 1.[1]

---

[1] Although the Clerk has docketed Richardson's Motion as a Motion to Amend the Complaint, it does not seek to add any factual allegations. *See generally* doc. 16. Since the Clerk's characterization of the "nature" of Richardson's suit is irrelevant to its merits, and the "Motion" does not include any additional allegations that would alter the analysis below, it is **DISMISSED as moot**. Doc. 16.

4

Since it is clear, as discussed below, that the judges and prosecutors are immune from Richardson's claims and the public defenders are not subject to suit under § 1983, and the pendency of the criminal action bars further relief, the Court need not exhaustively recite the factual allegations.

Prosecutors are immune from § 1983 liability where their alleged malfeasance stems from their "function as advocate." *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999). They enjoy "absolute immunity for the initiation and pursuit of criminal prosecution," even when accused of perjury. *Id.; see also Imbler v. Pachtman*, 424 U.S. 409 (1976) (prosecutorial immunity applied to allegations prosecutor knowingly used perjured testimony and suppressed material evidence at trial); *Jackson v. Capraun*, 534 F. App'x 854, 859 (11th Cir. 2013) (prosecutor entitled to absolute immunity for initiating prosecution even if he did so with malicious intent); *Fullman v. Graddick*, 739 F.2d 553, 559 (11th Cir. 1984) (determining prosecutor entitled to immunity from § 1983 liability for allegedly conspiring to withhold evidence and to create and proffer perjured testimony). Prosecutorial immunity "extends to a prosecutor's 'acts undertaken . . . in preparing for the initiation of judicial proceedings

or for trial, and which occur in the course of his role as an advocate for the State.'" *Jones*, 174 F.3d at 1281 (citation omitted).

> Prosecutorial immunity applies, for instance, to the prosecutor's actions in initiating a prosecution and presenting the State's case. A prosecutor is immune for malicious prosecution. Prosecutors are immune for appearances before a court and conduct in the courtroom, including examining witnesses and presenting evidence in support of a search warrant during a probable cause hearing.

*Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009) (citations omitted).

Richardson alleges that the prosecutor defendants have ignored his allegations of defects in the indictment against him, *see* doc. 1 at 16 & 31, amounting to what he characterizes as "prosecutorial misconduct," *id.* at 31. Seeking and pursuing an indictment falls squarely within the actions for which a prosecutor is immune from suit, even assuming that those actions are mistaken or even malicious. Cook Jones and Deleon are, therefore, immune from claims for damages arising from actions in their capacity as prosecutors.

To the extent that Plaintiff alleges claims against Judges Morse and Walmsley in their judicial capacities, judges are also generally immune from suit unless they act in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); *Sibley v. Lando*, 437

F.3d 1067, 1070 (11th Cir. 2005); *Simmons v. Conger*, 86 F.3d 1080, 1084-85 (11th Cir. 1996). This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction. *See Stump*, 435 U.S. at 356; *Harris v. Deveaux*, 780 F.2d 911, 914 (11th Cir. 1986). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

All of Richardson's allegations against the judges involve his disagreement with their rulings in his pending case. He objects to the judges' failure to "inquire" into what he contends is an ambiguous date on the indictment, doc. 1 at 12, he objects to the transfer of his case from assignment to Judge Morse to Judge Walmsley, *id.*; *see also id.* at 19, he objects that neither judge addressed his speedy-trial requests over his counsel's refusal to assert them, *id.* at 15, he objects to Judge Morse's refusal to act on his objection to his bond status, *id.* at 19, and Judge Morse's failure to "entertain" his motion asserting that his counsel was ineffective, *id.* Even assuming that Richardson alleged some error in either judge's handling of those matters in his pending criminal case, those errors would not have occurred "in the clear absence of all

7

jurisdiction." *Stump*, 435 U.S. at 356-57. Judges Morse and Walmsley, therefore, are immune from his claims for damages.

Finally, Richardson's claims against defendants Kelly and Byrne fail because, as public defenders, they are not subject to suit under § 1983. In order to prevail on a civil rights action under § 1983, a plaintiff must establish that he was "deprived of a federal right by a person acting under color of state law." *Almand v. DeKalb Cty.*, 103 F.3d 1510, 1513 (11th Cir. 1997). The Supreme Court has concluded "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *see also Wahl*, 773 F.2d at 1173 (finding public defender "did not act under 'color of state law' notwithstanding his appointment as counsel by a judicial officer"). As defendants Kelly and Byrne's actions, or inactions, as public defenders were not performed "under color of state law," they cannot be sued under § 1983.[2]

---

[2] Richardson's claims against the public defenders are most plausibly construed as asserting their liability for constitutional violations, under § 1983. *See, e.g.,* doc. 1 at 3-4. To the extent that he might assert some state law claim against the public defenders, in light of his failure to allege a viable federal claim, the Court should decline to exercise supplemental jurisdiction over any such claim. *See, e.g., Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) ("[I]f the federal claims are

Finally, even if Richardson could identify a state-actor defendant who was not immune from suit, the pendency of his state prosecution is fatal to the viability of the instant claims. To the extent that he asks this Court to weigh in on the propriety of ongoing state proceedings against him, any ruling by this Court could substantially interfere with the results reached in the state court proceeding. *See 31 Foster Children v. Bush*, 329 F.3d 1255, 1276 (11th Cir. 2003) (noting the importance of "whether the federal proceeding will interfere with an ongoing state court proceeding" in determining whether abstention is appropriate). Pursuant to *Younger v. Harris*, 401 U.S. 37, 53 (1971), federal courts must abstain from hearing claims that would interfere with pending state criminal proceedings, provided that the party seeking federal relief has an adequate remedy at law and has not shown that he will suffer irreparable injury. Plaintiff, obviously, remains free to allege constitutional and procedural violations in his state criminal proceedings. He thus cannot demonstrate the lack of an adequate remedy at law nor irreparable injury. *Younger*, 401 U.S. at 46 ("Certain

---

dismissed prior to trial, [*United Mine Workers v.*] *Gibbs* strongly encourages or even requires dismissal of state claims." (internal quotation marks and citations omitted)).

types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term."). Thus, any such arguments are for the state court. *See also Heck v. Humphrey*, 512 U.S. 477, 487 n. 8 (1994) ("[I]f a state criminal defendant brings a federal civil-rights lawsuit during the pendency of his criminal trial, appeal, or state habeas action, abstention may be an appropriate response to the parallel state-court proceedings.").[3]

Finally, Richardson's request for an "inquiry" and that "criminal charges [be] filed on all guilty parties," is legally frivolous. *See* doc. 1 at 5. Private citizens are simply not permitted to initiate criminal actions in federal court. *See, e.g., Lopez v. Robinson,* 914 F.2d 486, 494 (4th Cir. 1990) ("No citizen has an enforceable right to institute a criminal

---

[3] Indeed, to the extent that his allegations implicate the validity of his continued detention and he seeks immediate release, § 1983 affords Richardson no remedy: "[A] prisoner in state custody cannot use a § 1983 action to challenge the fact or duration of his confinement. . . . He must seek federal habeas corpus relief (or appropriate state relief) instead." *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (quotes and cites omitted); *Heck*, 512 U.S. at 481 (1994) ("[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983."). And before he can bring a federal habeas action, he must first exhaust his available state remedies through either a direct appeal or another petition for state collateral relief. *Wilkinson*, 544 U.S. at 79 (federal "habeas corpus actions require a petitioner fully to exhaust state remedies, which § 1983 does not"); 28 U.S.C. §§ 2254(b), (c).

10

prosecution." (citing *Linda R. v. Richard V.*, 410 U.S. 614, 619 (1973) ("In American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."))); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) ("[A] private citizen has no authority to initiate a federal criminal prosecution."). The Court is also without authority to order the United States Attorney, or indeed any other law enforcement officer, to initiate a prosecution. *See, e.g., Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 379 (2nd Cir. 1973) (citations omitted) ("federal courts have traditionally and, to our knowledge, uniformly refrained from overturning, at the insistence of a private person, discretionary decisions of federal prosecuting authorities not to prosecute persons regarding whom a complaint of criminal conduct is made[,] . . . even in cases . . .where . . . serious questions are raised as to the protection of the civil rights and physical security of a definable class of victims of crime and as to the fair administration of the criminal justice system."). Such orders would violate the Constitution's separation of powers between the Executive and Judicial Branches. *See id.* at 379-80 (quotes and cite omitted) (the United States Attorney, although a member of the bar and an officer of the court, "is nevertheless an

11

executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case.").

None of the defendants that Richardson has named is proper. District Attorney Sheleena Cook Jones and Assistant District Attorney Deleon are entitled to prosecutorial immunity against Richardson's claims, as they all involve prosecutorial actions. Judges Morse and Walmsley are entitled to judicial immunity, as there is no allegation that any of the actions alleged were in "clear absence of all jurisdiction." Finally, his § 1983 claims against defendants Kelly and Byrne fail because, in their capacity as public defenders, they are not state actors. Finally, even assuming that Richardson asserted some defect in his ongoing prosecution against a viable defendant, pursuit of his claims at this time is precluded by *Younger* and *Heck*. His request for investigation

and prosecution of any defendant is frivolous. Accordingly, his Complaint should be **DISMISSED**.[4]  Doc. 1.

Finally, the Court must assess Richardson's filing fee. *See* 28 U.S.C. § 1915(b).  Plaintiff's prisoner trust fund account statement reflects average monthly deposits of $145.00.  Doc. 15 at 1.  Based upon his furnished information, he owes an initial partial filing fee of $29.00. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula).  His account custodian shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian.  The balance due from plaintiff shall be collected by the

---

[4] Though a *pro se* prisoner normally should be given an opportunity to amend his complaint at least once, *see, e.g., Johnson v. Boyd*, 568 F. App'x 719, 724 (11th Cir. 2014), "a district court need not allow amendment if the amended complaint would still be subject to dismissal," *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015).

13

custodian at his next institution in accordance with the terms of the payment directive portion of this Order.[5]

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of

---

[5] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED**, this 27th day of February, 2023.

/s/ Christopher L. Ray
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA